```
                  UNITED STATES DISTRICT COURT
                     DISTRICT OF MINNESOTA
                  Criminal No. 10-173 (MJD/JJG)
```

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | GOVERNMENT'S RESPONSE |
| | ) | TO POSITION OF DEFENDANT |
| v. | ) | WITH RESPECT TO SENTENCING |
| | ) | |
| KENNETH LEON WILCOX, | ) | |
| | ) | |
| Defendant. | ) | |

The United States of America, by and through its attorneys, B. Todd Jones, United States Attorney for the District of Minnesota, and Kimberly A. Svendsen, Assistant United States Attorney, hereby submits its response to defendant Kenneth Leon Wilcox's position with respect to sentencing.

## BACKGROUND

Defendant Kenneth Leon Wilcox began raping his daughter, B.C., on a weekly basis in approximately 2005, when she was 12 years old. (Presentence Investigation Report, hereinafter "PSR" at ¶ 6.) On five occasions, Wilcox videotaped his sexual abuse of his daughter, and he later masturbated while watching the recordings. (Plea Agreement and Sentencing Stipulations, hereinafter "Pl. Agr." at ¶ 2; Psychosexual Evaluation at 7.) These weekly rapes continued for approximately four years, until B.C. was sixteen years old, and ended only when B.C. brought the videotape depicting her sexual abuse to a friend's mother, who provided the tape to law enforcement. (PSR at ¶¶ 5-6.)

The five videos of Wilcox sexually abusing B.C. were shot

between October 20, 2007, when B.C. was 14 years old, and March 30, 2008, when B.C. was 15 years old.  (Id. at ¶¶ 10-15.)  In total, they last a little over one hour.  (Id. at 10.)  The video segments depict B.C. using various sex toys on herself while Wilcox films, Wilcox having vaginal sex with B.C., and Wilcox giving and receiving oral sex from B.C.  (Id. at ¶¶ 11-15.)  The videos were shot in the cab of Wilcox's semi-truck and in hotel rooms while B.C. was traveling with Wilcox on his trucking runs.  (Id.)

In addition to videotaping his sexual abuse of B.C., Wilcox made B.C. sign contracts detailing the sex acts she would be required to perform.  (Id. at ¶¶ 8-9.)  One of the contracts was signed and dated November 21, 2006, when B.C. was 13 years old.  Wilcox now claims that these sex contracts were not serious, and that he never intended for B.C. to engage in the conduct listed in the contracts.  (Doc. No. 61 at 9.)  Among other things, the contracts discussed various sex acts, many of which Wilcox and B.C. actually performed.  The contracts required that B.C. convince her friends to take pictures of themselves, which B.C. apparently did.  The contracts also "talk of starting a 'sex house' with [B.C.] and allowing the defendant to teach [B.C.'s] daughters about sex (provided that she had daughters in the future)."  (PSR at ¶ 8-9.)

During the execution of search warrants at Wilcox's residence and in a semi trailer Wilcox used for storage, law enforcement recovered a large amount of pornography, including images of child

2

pornography.  (Id. at ¶ 7-9.)  These images included 20 series of child pornography with identified victims and many topless images of B.C.  (Id. at ¶ 90.)

## ARGUMENT

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." Gall v. United States, 552 U.S. 38, 49 (2007).  "[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." Id. at 49-50.  The parties agree that the applicable advisory Guidelines range in this case is life imprisonment.  (Pl. Agr. at ¶ 6(c); PSR at ¶ 131.)  Taking into account all of the § 3553(a) factors, the government respectfully requests that this Court deny the defendant's request for a downward variance and sentence the defendant to life imprisonment.  For the reasons set forth below, the defendant's requested term of 20 years of imprisonment would be insufficient to comply with the purposes set forth in § 3553(a)(2).

### 1. Nature and circumstances of the offense

As set forth above, the defendant sexually abused his daughter on a weekly basis for approximately four years.  This amounts to at least two hundred discrete rapes of a 12- to 16-year-old girl.  The defendant isolated the victim from any possible support system by

3

taking her on the road, perpetrating acts of sexual abuse against her in the cab of his semi truck or in hotel rooms across the nation. Because weekly sexual gratification at the expense of his daughter was not enough, the defendant videotaped five sessions of sexual abuse and masturbated while he watched them later. One of these videotaped rapes took place on the victim's fifteenth birthday.

The defendant also required his daughter to sign horrific sexual contracts detailing future abuse that she would be expected to endure. The contracts were lengthy and discussed such topics as "master and slave roles," "punishments for noncompliance," and "payment for nude pictures of [B.C.'s] friends." (PSR at ¶ 9.) The defendant's claim that these contracts never meant anything to him is belied by the fact that the victim actually engaged in a significant amount of the conduct contained in the contracts. Indeed, it is difficult to imagine how the defendant could have simply come upon these contracts on a website, as he claims, unless he was searching the internet for just such documents to make his daughter sign.

The defendant's actions, including the duration and frequency of the sexual abuse he perpetrated against his daughter and the depraved sexual contracts he made her sign to make clear that he had no intention of stopping the rapes, evidence the defendant's callous disregard for the severe physical, emotional and

psychological damage he inflicted on his daughter over a period of four years. Indeed, the victim reports that she "suffers from flashbacks, nightmares, and suicidal thoughts as a result of her sexual victimization." (PSR at ¶ 17.) The victim's psychiatrist and psychologist have indicated that she will likely require lifelong mental health treatment to deal with the effects of the defendant's abuse.

## 2. History and characteristics of the defendant

Many of the defendant's requests for a downward variance are premised on his history and characteristics, including the defendant's arguments that he is a first time sex offender, he is remorseful, he wants treatment, he has engaged in self-help while in jail, and he was a victim of sexual abuse in his youth.

First, the defendant's request for leniency because he is a "first time sex offender" falls flat. Although this is the defendant's first <u>conviction</u> of a sex offense, this is not a case in which the defendant committed a single act of sexual abuse and argues for a downward variance based on a spotless record. Rather, the defendant sexually abused his daughter on a weekly basis for approximately four years. Granting a downward variance as a reward for escaping detection for so long would not result in a just sentence.

Second, the defendant's current remorse, desire for treatment, and efforts at self-help may be commendable, but they do not

reflect the same sincere desire for change as similar conduct undertaken before a defendant's crimes are detected.  Indeed, when law enforcement interviewed the defendant following his arrest, he initially blamed the victim for her sexual abuse in this case, stating, "This all started, because she knew I wasn't with her mom.  She convinced me to do it even though I knew I shouldn't of.  I needed that release in that avenue and it happened. . . .  She came to me and proposed it."  (Def. Mot. Hr'g Ex. 1 at 30; see also Mot. Hr'g Tr. at 31.)  Moreover, in his sentencing position and his letter to the Court, the defendant appears to blame his self-diagnosed sexual addiction for his conduct rather than admitting his own fault.  Given the severity of the defendant's conduct, his current remorse is not sufficient to justify a downward variance.[1]

Third, given the defendant's experiences with sexual abuse as a child, he was in a unique position to understand precisely the type of damage he was inflicting on his daughter when he sexually abused her.  Yet, he chose to do it anyway.  This factor does not weigh in favor of a downward variance.

---

[1] Given the defendant's assertion that he "pled guilty without a fuss" and "never thought about putting his daughter through a trial," (Doc. No. 61 at 11), the government assumes the defendant is withdrawing his motion to withdraw from the plea agreement.

3. **<u>Need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant</u>**

In light of the defendant's repeated, long-term sexual abuse of his daughter and its certain life-long effects on the victim, a sentence of life imprisonment would provide just punishment in this case. Such a sentence would also reflect the seriousness of the offense, promote respect for the law, and afford adequate deterrence by sending a strong message to both this defendant and others who might commit such an offense that such horrific abuse of a child by her father cannot be tolerated.

The defendant asserts that he presents a low risk to re-offend because his only victim was his daughter, and submits a psychosexual evaluation to this effect. Initially, it is important to note that the sex contracts, which the defendant now claims were meaningless, state that the defendant intends to "teach [the victim's] daughters about sex" if she has daughters. (PSR at ¶ 9.) Moreover, the Court is not required to grant the defendant a downward variance on the basis of his psychologist's report:

> Although a psychologist's report may provide mitigating evidence for the court's consideration during sentencing, the court must still conduct an independent evaluation of the defendant in light of the factors set forth in 18 U.S.C. § 3553(a). If the psychologist's report cannot be squared with the court's own judgment of the defendant's culpability and the danger he poses to society, the court is free, in its discretion, to decline to rely on the psychologist's findings, so long as the court explains its basis for doing so.

United States v. DeSilva, 613 F.3d 352, 356,57 (2d Cir. 2010). The government respectfully submits that given all the factors in this case, particularly the nature and circumstances of the offense and the need to provide just punishment, a downward variance is not warranted on the basis of low risk of recidivism. Indeed, the defendant's requested sentence would be insufficient to comply with the purposes of sentencing.

**4. The kinds of sentence and the sentencing range established under the Guidelines**

There is no dispute that the advisory Guidelines range provides for a sentence of life imprisonment in this case. The defendant's offense level is 48 – five levels above the maximum possible offense level on the Guidelines chart. In order to arrive at this off-the-charts offense level, the defendant received enhancements that included a two-level enhancement because the victim was under 16 years old, a two-level enhancement because the offense involved the commission of a sexual act, a four level enhancement because the videotape the defendant produced portrays sadistic or masochistic conduct, a two-level enhancement because the victim was his daughter, and a five level enhancement for being a repeat and dangerous sex offender against minors. (PSR at ¶¶ 27-88.) The defendant's requested sentence would represent an 11-level downward variance, from offense level 48 to offense level 37.

The defendant asserts that the Court should accord minimal deference to the Sentencing Guideline for production of child

pornography, § 2G2.1, on the ground that the Guideline lacks an empirical basis. (Doc. No. 61 at 16-23.) Most of the defendant's cited authorities concern Guideline § 2G2.2, which applies in cases involving possession, receipt and distribution of child pornography. Moreover, while this Court may be "free to vary from the guideline based on policy concerns, the Supreme Court's recent decisions, 'do not hold that a district court <u>must</u> disagree with any sentencing guideline, whether it reflects a policy judgment of Congress or the Commission's "characteristic" empirical approach.'" <u>United States v. Ultsch</u>, 578 F.3d 827, 830-31 (8th Cir. 2009) (affirming as reasonable 360-month sentence in child pornography receipt, distribution and possession case involving peer-to-peer file sharing, where defendant also admitted sexually abusing his daughter) (citation omitted) (emphasis in original).

The government's position is that the Sentencing Guidelines applicable to child pornography offenses are entirely proper and based on a careful analysis conducted by Congress and the Sentencing Commission, and that the Court should decline the defendant's invitation to grant them "less deference." However, the Court need not decide this issue in order to sentence the defendant, as the government is not requesting a "mechanical application of the child pornography guidelines," or that the Court "simply defer" to the Guidelines in this case. (Doc. No. 60 at 17-18.) Rather, taking into account all the § 3553(a) factors,

including the Guideline range as well as the horrendous offense conduct in this case and its impact on a then-12- to 16-year-old girl, it is clear that a life sentence is reasonable in this case.

5. **Need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct**

District courts within the Eighth Circuit routinely impose sentences far in excess of the twenty years the defendant is requesting in cases similar to this one. For example, in United States v. Hoffman, the defendant was convicted of ten counts of transporting five minor females across state lines for the purpose of engaging in illegal sexual activity. 626 F.3d 993, 994 (8th Cir. 2010). The Eighth Circuit affirmed the defendant's sentence of consecutive life terms of imprisonment on each of the ten counts as reasonable. Id. at 994, 998-99. At sentencing, the district court stated, "[h]opefully, this sentence, life imprisonment, will uphold the law and respect for the law and send a message to others that violation of children, young girls like these victims, shall not be and will not be tolerated in the courts around this United States of America." Id. at 995.

Similarly, in United States v. Brewer, the defendant was convicted of production and possession of child pornography after he raped the victim "over a two-year period when she was thirteen and fourteen years old and [took] photographs of her during these incidents." 588 F.3d 1165, 1167 (8th Cir. 2009). The defendant

10

was sentenced to 600 months of imprisonment.  <u>Id.</u> at 1169.  <u>See also</u> <u>United States v. Shuler</u>, 598 F.3d 444, 446-47 (8th Cir. 2010) (affirming 470-month sentence for production of child pornography where defendant had no criminal history); <u>United States v. Replogle</u>, 628 F.3d 1026, 1031-32 (8th Cir. 2011) (affirming 360-month statutory maximum sentence for production of child pornography); <u>United States v. Lemke</u>, 377 Fed. Appx. 570, 2010 WL 2219063, at *1-2 (8th Cir. June 4, 2010) (affirming 360-month statutory maximum sentence for production of child pornography); <u>United States v. Heath</u>, 624 F.3d 884, 885-89 (8th Cir. 2010) (affirming 293-month sentence for production of child pornography where defendant sexually exploited two intoxicated, underage girls at a party).

A sentence of life imprisonment would be consistent with sentences imposed in similar cases within the Eighth Circuit and would avoid creating an unwarranted sentencing disparity among defendants with similar records who have been convicted of committing similar conduct.

**CONCLUSION**

For the reasons stated above, the government respectfully requests that the Court impose a Guidelines sentence of life imprisonment. This Guidelines range is a reasonable sentence as guided by the factors outlined in Title 18, United States Code, Section 3553(a).

Dated: April 4, 2011

        Respectfully Submitted,

        B. TODD JONES
        United States Attorney


        s/Kimberly A. Svendsen
        BY: KIMBERLY A. SVENDSEN
        Assistant U.S. Attorney
        Attorney ID No. 235785CA