UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

------------------------------------------------------------
                                )
United States of America,       )   File No. CR-10-173
                                )            (MJD/JJG)
          Plaintiff,            )
                                )
vs.                             )   Minneapolis, Minnesota
                                )   April 5, 2011
Kenneth Leon Wilcox,            )   2:05 p.m.
                                )
          Defendant.            )
                                )
------------------------------------------------------------

BEFORE THE HONORABLE MICHAEL J. DAVIS
UNITED STATES DISTRICT COURT JUDGE

**(SENTENCING)**


APPEARANCES
  For the Plaintiff:            U.S. Attorney's Office
                                KIMBERLY A. SVENDSEN, AUSA
                                600 U.S. Courthouse
                                300 South Fourth Street
                                Minneapolis, Minnesota 55415

  For the Defendant:           Federal Public Defender's Office
                                DOUGLAS OLSON, ESQ.
                                107 U.S. Courthouse
                                300 South Fourth Street
                                Minneapolis, Minnesota 55415

  Court Reporter:              LORI A. SIMPSON, RMR-CRR
                                1005 U.S. Courthouse
                                300 South Fourth Street
                                Minneapolis, Minnesota 55415




    Proceedings recorded by mechanical stenography;
transcript produced by computer.

1           **P R O C E E D I N G S**

2              **IN OPEN COURT**

3           THE COURT:  Let's call this matter.

4           THE CLERK:  The United States of America vs.

5     Kenneth Leon Wilcox, Criminal Case No. 10-CR-173.  Counsel,

6     will you please state your appearances for the record.

7           MS. SVENDSEN:  Good afternoon, Your Honor.

8     Kimberly Svendsen on behalf of the United States.

9           THE COURT:  Good afternoon.

10          MR. OLSON:  Good afternoon, Your Honor.  Doug

11    Olson on behalf of Mr. Wilcox, who is with me.

12          THE COURT:  Good afternoon.  Step forward.

13          Counsel, there is a *pro se* motion that's before me

14    that I have not ruled on dealing with Mr. Wilcox wishing to

15    withdraw his plea.  What is your position on this?

16          MR. OLSON:  I do believe that Mr. Wilcox intends

17    to withdraw that motion and I think that's his request.  We

18    are ready to proceed.

19          THE COURT:  Is that correct, Mr. Wilcox?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Are you withdrawing your motion to

22    withdraw your plea?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  All right.  Counsel, have you had an

25    opportunity to review the presentence investigation report

1    in this matter?

2              MS. SVENDSEN:  Yes, Your Honor.

3              MR. OLSON:  Yes, Your Honor.

4              THE COURT:  Any objections to the factual

5    statements contained in the presentence investigation

6    report?

7              MS. SVENDSEN:  Not from the Government, Your

8    Honor.

9              MR. OLSON:  Your Honor, I've noted in

10   particular -- the addendum sets forth my factual objections

11   to the PSR.  And as I've further indicated in my position

12   paper, we do contest and object to the factual allegation

13   that there was sexual abuse involving Mr. Wilcox and the

14   teenager identified as C.L.H. in paragraphs -- particularly

15   paragraph 6 of the PSR.

16             THE COURT:  The defendant objects to certain

17   factual details contained in paragraph 6 of the presentence

18   investigation report.  Specifically he denies allegations

19   that he solicited the victim's friends and that pictures --

20   that the pictures taken by the victim of her friend were at

21   the direction of the defendant.

22             The defendant further objects to all the

23   allegations made by the victim's friend C.L.H.  He admits

24   that C.L.H. traveled with him on two trips, but that he did

25   not inappropriately touch her or otherwise sexually abuse

1    this teenager.

2            These facts are supported by the victim's and

3    C.L.H.'s statements to law enforcement and Child Protective

4    Services.  Furthermore, the allegations are consistent with

5    some of the terms of the sexual -- sex contracts that the

6    defendant had the victim sign.

7            These objections do not affect the applicable

8    guideline calculations and therefore the Court will overrule

9    the Defense objections to those and they will be included

10   into the presentence investigation report.

11           Further the defendant objects to those parts of

12   paragraphs 124 and 125 that mention wage garnishment for

13   child support.  The defendant states that at the time his

14   wages were garnished, he lived with the victim and her

15   mother and provided them with financial support; therefore,

16   garnishment of his wages is irrelevant.

17           These objections do not affect the sentencing

18   guideline calculations and will not be taken into account

19   in sentencing; therefore, those paragraphs will be taken

20   out.

21           The Court adopts the factual statements contained

22   in the presentence investigation report as its findings of

23   fact subject to the Court's ruling.

24           Counsel, have you had an opportunity to review the

25   advisory guideline calculations?

1          MS. SVENDSEN:  Yes, Your Honor.

2          MR. OLSON:  Yes, Your Honor.

3          THE COURT:  Any objections to those calculations?

4          MS. SVENDSEN:  Not from the Government, Your

5     Honor.

6          MR. OLSON:  No, Your Honor.

7          THE COURT:  They are as follows:  Total offense

8     level of 48, criminal history points of 1, Category I,

9     imprisonment range of life imprisonment, supervised release

10    of five years to life, a fine range of 25,000 to 250,000

11    dollars, and a special assessment of $200 and that's $100 on

12    the two counts that the defendant had pled guilty to.

13          All right.  Mr. Olson.

14          MR. OLSON:  Well, the Court is certainly aware of

15    my request and my position here with respect to sentencing.

16    There's a reason that, you know, we spend time trying to

17    discuss and talk about a person's past history and their

18    circumstances.

19          This is an individual who for most of the 38 years

20    of his life, with a couple of minor misdemeanors, was a

21    law-abiding person, never been in prison, worked, work

22    history, no obvious glaring dysfunction in his life.

23          Obviously he had some difficulty in his childhood,

24    somewhat of an unusual childhood.  He himself also was an

25    abuse victim not on one occasion, but twice as he was being

1    raised.

2         So as we stand here today we're looking at a

3    person who up until he started abusing his daughter wasn't

4    molesting children, wasn't a predator, no indication that

5    he's a psychopath or that he suffered from some horrible

6    schizophrenia or mental illness, basically no substantial

7    criminal history.

8         So something happened, you know, a number of years

9    ago to this individual and he stands before the Court having

10   acknowledged his guilt.  He's a person who is appropriately

11   and sincerely remorseful that this is what happened.  He's a

12   person who absolutely wants treatment.  He is treatable.

13        Now, there's a reason that -- there's an

14   additional reason, above and beyond adding some color and

15   layers to his personal background and circumstances, that we

16   would get a psychosexual evaluation done for a person.

17        And I'll comment for a second because there are

18   all kinds of sex offenders, predators, child molesters,

19   abusers we wouldn't think of getting a psychosexual

20   evaluation done on because we know what the result is going

21   to be because we know that all kinds of these horrible

22   predatory abusers, you can't say anything good about them,

23   they can't say anything good about themselves, they aren't

24   remorseful, they're psychopaths.  Mr. Wilcox isn't one of

25   them.

1             Mr. Wilcox when he got arrested a year ago, you

2     know, he went through a period, like some offenders do,

3     where there's the denial, there's the minimization, there's

4     the anger, there's the grief, there's the woes me phase, and

5     what am I looking at and whatnot.

6             But sometime starting last spring and particularly

7     into the summer and the fall he really made an effort at,

8     you know, first of all dealing with what he had done, trying

9     to address it in whatever -- how do you do it, whatever is

10     appropriate, and then trying to figure out if there's

11     something available.  While he is sitting in custody it's

12     frustrating because the resources aren't available.  Is

13     there something that I can do for myself to help me better

14     myself, start thinking about why I became a child abuser,

15     what it is that drove me to do this, is there something I

16     can do, is there a future for me, is there more to me than

17     just a monster.

18             And his efforts at self help has been a constant

19     thing he's been working on.  He's gone up and down every now

20     and then, but his efforts are sincere.  It demonstrates that

21     he is a person who at the end of the day is treatable.

22             He would like, as I indicated in my position

23     paper, if the Court gives him the benefit of some freedom

24     some day way in the future, to reach out and help other

25     people.  That's the kind of person that he is.

1          And I'll simply -- I'll add to that that, you

2     know, I've been doing this for 25 years.  The Court has been

3     doing this for longer than that.  I have never really seen a

4     sex offender reach out and take these kinds of self help

5     measures.

6          And this isn't about putting on a show for

7     sentencing.  You know, you can only -- people put on their

8     colors and their pictures for sentencing, but you don't

9     spend hours and hours engaging in reading books and asking

10    your attorney to go get you another book and going through

11    the workbook which comes along with it, sending out letters

12    to ministries, writing out and taking classes and

13    correspondence courses just because you want to get a better

14    sentence.  That's not what this is about.

15         So whatever else comes here today, I commend

16    Mr. Wilcox for taking some efforts to try and improve

17    himself.  There's not a lot available while you're sitting

18    in the Sherburne County Jail.  And whatever else happens

19    here he'll continue to work on it.  That's really kind of

20    the person that he is.

21         You know, I can't, he can't say much about the

22    horrible nature of the abuse, the strange, disgusting nature

23    of the sexual contracts and everything that went on between

24    him and his daughter.

25         And he knows that he's got to be punished.  He

1    knows he's got to go to prison for it.  Ultimately it's the

2    Court's determination what's the appropriate punishment in

3    light of the conduct.

4           Can't turn back the past, but I'd ask the Court to

5    give at least some consideration if you'd give him some

6    glimmer of hope or optimism so that he can make his days in

7    prison something that he can continue to strive and improve

8    himself on.

9           I'd simply ask that the Court -- a couple of

10   things.  You know, life is not an appropriate sentence for a

11   person who appears before the Court as a first-time

12   offender, who has appropriately stepped up to the plate,

13   pled guilty.  He's remorseful and he's treatable.  I'd ask

14   that the Court impose a sentence of 20 years as sufficient

15   but not greater than necessary here.

16          Just a couple of last things.  The Court -- I

17   would ask the Court to give some consideration to the six

18   months he spent in the Martin County Jail -- BOP won't give

19   him credit for that -- and some consideration for the fact

20   that he's been in segregation in the special housing unit,

21   which is a difficult way to spend your time at the Sherburne

22   County Jail.

23          Mr. Wilcox has asked for recommendations for

24   mental health and sex offender treatment.  Lexington,

25   Kentucky, is one place that has both available.  It also

1   would be closer to his mother.  So I would ask the Court to

2   make a recommendation to BOP that he get that treatment help

3   while he's serving his sentence and that if appropriate --

4   if it's appropriate, that he go to Lexington, Kentucky.

5            Thank you, Your Honor.

6            THE COURT:  Mr. Wilcox, would you please step to

7   the microphone.  Sir, this is your opportunity to speak to

8   the Court.  This is your opportunity to tell me anything

9   that you want to tell me about yourself, about this offense,

10   or anything else that you think I should know before I

11   sentence you.  Please talk to me.

12            THE DEFENDANT:  There's not a day that don't go by

13   that I don't regret what has happened.  I wish I could turn

14   back and change what I've done.  It basically changed my

15   whole life.  I didn't realize the addiction that I had to

16   pornography, period, since my incarceration of seeing what I

17   was doing to myself, to my daughter, and to the rest of my

18   family because of my closed-mindedness.

19            I've been working with an organization called Pure

20   Life Ministry out of Dry Ridge, Kentucky, and he's a former

21   deputy sheriff out of California and that's what he

22   specializes in and it's helped me greatly and I plan on

23   keeping a long way -- in that step and other steps, you

24   know, to get myself back to where I can be productive and

25   helpful to others.

1              THE COURT:  Anything else, sir?

2              THE DEFENDANT:  Not that I can really think of.  I

3      mean, I wish my daughter was here so I could tell her how

4      sorry I was, but unfortunately she's not.

5              THE COURT:  Thank you.  Step back.

6              Anything for the Government?

7              MS. SVENDSEN:  Yes, Your Honor.  The sexual abuse

8      that this defendant perpetrated against his daughter over a

9      period of years is unimaginable for us.  This victim has

10     described the flashbacks and the nightmares and the suicidal

11     thoughts that she had to Probation, but there's no way for

12     us to conceive of what it's like for a young girl to have

13     her dad, who is a person who is expected to care for her and

14     keep her safe, rape her over a period of years.

15             This defendant preyed on his daughter by taking

16     her out on the road away from home and away from any

17     possible support system that she might have, where she was

18     isolated; and he did this over and over for a period of

19     years.  He videotaped the abuse to watch it later and that's

20     a tape that the Court has had an opportunity to view.

21             We can't conceive of what it's like for this young

22     girl to have a mother who disbelieved that this was

23     happening, a mother who would write a letter to the Court

24     supporting this defendant rather than supporting the victim

25     here today.

1          And we can't imagine what it's like for that young

2    girl at 13 years old to have her dad present her with the

3    type of sex contracts that this defendant did in this case

4    that talk about things that are just unspeakable and to have

5    her sign those contracts and to initial the paragraphs

6    describing the sexual conduct that she would be expected to

7    engage in.

8          Those contracts repeatedly instruct her to get

9    pictures of her friends and to ask her friends to

10   participate in the abuse.  They repeatedly tell her that any

11   daughters she has will be subject to the same abuse that she

12   went through.

13         And the contracts as they go are dated further and

14   further out to make it clear -- the last one says that the

15   abuse will continue on through some date in 2015, making it

16   clear to her that this is going to continue and just

17   increasing the psychological torture that she goes through,

18   that there's no way out of this situation.

19         And respectfully the Government suggests that the

20   defendant's assertion that these contracts are not serious

21   or should be disregarded is patently absurd.  On their face

22   they repeatedly assert that they aren't jokes and that the

23   defendant's daughter will be required to follow them.  And

24   this is the reality of what this victim went through for

25   four years and this is the conduct that brings us here

1    today.

2         In my sentencing position I've addressed most of

3    the defendant's requests for a downward variance and I won't

4    rehash those arguments here other than to point out that the

5    defendant is asking for a very substantial variance.

6         His guideline range, as the Court is well aware,

7    is substantially off the top of the guideline chart and the

8    defendant is asking for basically an 11-level downward

9    variance that would disregard virtually all of the

10   enhancements that apply in this case.

11        I would like to say briefly a word about the

12   report, the psychosexual evaluation that the defendant has

13   provided here today.  And although the expert is not here

14   for the Government to cross-examine, it does not appear that

15   her evaluation takes into account information that's in the

16   PSR or in the record before the Court that really sets forth

17   the defendant's desire or intent to continue to engage in

18   these type of behaviors, specifically his requests for his

19   daughter to take pictures of her friends and his indications

20   that he would do the same thing to the defendant's [sic]

21   daughter.

22        In addition the report indicates that throughout

23   the expert's analysis the defendant in connection with one

24   of the tests attempted to exaggerate or emphasize his mental

25   health problems, which indicates that he may not have been

1    entirely truthful with the expert.

2           The defendant's actions in this case were

3    undeniably monstrous and the victim will carry them with her

4    for the rest of her life and attempt to deal with them.  A

5    sentence of life imprisonment in this case would be a just

6    one and would be sufficient, but not greater than necessary,

7    to comply with the purposes of sentencing.

8           Thank you, Your Honor.

9           THE COURT:  Thank you.

10          Kenneth Leon Wilcox, please step to the podium.

11   On October 14, 2010 the defendant pled guilty to Counts 1

12   and 2 of the ten-count indictment, Count 1, transportation

13   of a minor with intent to engage in criminal sexual

14   activity, in violation of Title 18, United States Code,

15   Section 2423(a), a Class A felony; Count 2, production of

16   child pornography, in violation of Title 18, United States

17   Code, Section 2251(a) and (e), a Class B felony.  It is

18   considered and adjudged that the defendant is guilty of

19   those two counts of the ten-count indictment.  The Court

20   will sentence the defendant as follows:

21          The Court has reviewed the presentence

22   investigation report.  The Court has reviewed the sentencing

23   memorandums that have been supplied to the Court by both the

24   Defense and the Government.  The Court has reviewed the

25   Eighth Circuit Court of Appeals decisions dealing with

1    sentencing.

2           The Court has reviewed the psychosexual report,

3    psychological report that was given to the Court by the

4    Defense.  The Court has reviewed any and all other

5    submissions to the Court, also including the Court viewing

6    the videotape that was confiscated from the defendant and is

7    part of the charges in this case dealing with the rape of

8    his own daughter.

9           The Court has reviewed the factors under Title 18,

10   3553, and will sentence the defendant accordingly.  The

11   defendant is hereby committed to the care and custody of the

12   Bureau of Prisons for a term of 480 months.  This term

13   consists of 480 months on Count 1 and 360 months on Count 2,

14   all to be served concurrently.

15          The Court will not impose a fine and there's no

16   forfeiture issues.

17          As of this time the defendant [sic] has not

18   identified the amount of restitution owed for ongoing

19   counseling and treatment.  If the victim subsequently

20   discovers further losses, the victim shall have 60 days

21   after discovery of those losses in which to petition the

22   Court for an amended restitution order.

23          Such order may be granted only upon a showing of

24   good cause for failure to include such losses in the initial

25   claim of restitution relief.  That's pursuant to Title 18,

1       United States Code, Section 3664(d)(5).

2               Over the period of incarceration the defendant

3       shall make payments of either quarterly installments of a

4       minimum of $25 if working non-UNICOR or a minimum of

5       50 percent of monthly earnings if working UNICOR.

6               The defendant should participate in the Inmate

7       Financial Responsibility Program while incarcerated.

8               The defendant is sentenced to a term of supervised

9       release for life.  This term consists of life on Counts 1

10      and 2 and all such terms to run concurrently.  The following

11      mandatory conditions are applicable:

12              The defendant must report to the United States

13      Probation and Pretrial Services Office in the district to

14      which the defendant is released within 72 hours of release

15      from the custody of the Bureau of Prisons.

16              Two, the defendant shall not commit any crimes,

17      federal, state, or local.

18              Three, the defendant shall not illegally possess a

19      controlled substance.  The defendant shall refrain from any

20      unlawful use of a controlled substance.  The defendant shall

21      submit to one drug test within 15 days of release from

22      imprisonment and at least two periodic drug tests thereafter

23      as determined by the Court.

24              Next, the defendant shall not possess a firearm,

25      ammunition or destructive device or any other destructive --

1   or dangerous weapon.

2          Next, the defendant shall cooperate in the

3   collection of DNA as directed by the probation officer.

4          Next, the defendant shall comply with the

5   requirements of the Sex Offender Registration and

6   Notification Act as directed by the probation officer, the

7   Bureau of Prisons, or any state sex offender registration

8   agency in which he resides, works, is a student, or was

9   convicted of a qualifying offense.

10          Next, restitution may be imposed.  It is a

11   condition of supervision that the defendant may pay in

12   accordance with the schedule of payments sheet of the

13   judgment.

14          Next, the defendant shall abide by the standard

15   conditions of supervised release that have been adopted by

16   this Court, including the following special conditions:

17          One, the defendant shall abstain from the use of

18   alcohol and other intoxicants and not frequent

19   establishments whose primary business is the sale of

20   alcoholic beverages.

21          Next, the defendant shall participate in a program

22   for substance abuse as approved by the probation officer.

23   That program may include testing and inpatient or outpatient

24   treatment, counseling, or support group.  Further, the

25   defendant shall contribute to the costs of such treatment as

1    determined by the Probation Office Co-Payment Program, not

2    to exceed the total cost of treatment.

3          Next, the defendant shall not possess or use a

4    computer or have access to any online service without the

5    prior approval of the United States Probation and Pretrial

6    Services Office.

7          The defendant shall identify all computer systems,

8    Internet capable devices, and similar memory and electronic

9    devices to which the defendant has access and allow

10   installation of a computer and Internet monitoring service

11   program.

12         Monitoring may include random examinations of

13   computer systems, along with Internet, electronic, and media

14   storage devices under the defendant's control.  The computer

15   system or devices may be removed for a more thorough

16   examination if necessary.  The defendant shall contribute to

17   the costs of such monitoring services based on the

18   defendant's ability to pay as deemed appropriate by the

19   Probation Office.

20         Next, the defendant shall refrain from accessing

21   that matter which relates to the activity in which the

22   defendant was engaged in committing the instant offense

23   behavior, namely child pornography.

24         Next, the defendant shall provide the probation

25   officer access to any requested financial information,

1    including credit reports, credit card bills, bank

2    statements, and telephone bills.

3          Next, the defendant shall not associate with

4    persons under the age of 18 except in the presence of a

5    responsible adult who is aware of the nature of the

6    defendant's background and current offense and who has been

7    approved by the probation officer.

8          Next, the defendant shall register with the state

9    sex offender registration agency in any state where the

10   defendant resides, is employed, carries on a vocation, or is

11   a student as directed by the probation officer.

12         The probation officer will provide the state

13   officials with any and all information, including substance

14   abuse and mental health treatment records, required by the

15   state sex offender registration agency.

16         The probation officer may direct the defendant to

17   report to that agency personally for additional processing,

18   including such things as photographing, fingerprinting, and

19   providing a blood sample for DNA records.

20         The defendant shall participate in sex offender

21   and/or mental health treatment as approved by the probation

22   officer and shall submit to risk assessment, which may

23   include, but not limited to, arousal screening, penile

24   plethysmographing and polygraphing and/or truth verification

25   testing.  Sex offender assessments and treatment are to be

1    conducted by a therapist approved in advance by the

2    Probation Office.

3              Further, the defendant shall contribute to the

4    costs of such treatment as determined by the Probation

5    Office Co-Payment Program, not to exceed the total cost of

6    treatment.

7              Next, the defendant shall not have -- shall have

8    no contact with the victims, including letters,

9    communication devices, audio or visual devices, visits, or

10   any contact through a third party without the Court's

11   permission, not the Probation Office's permission, the

12   Court's permission.

13             The defendant shall take all -- take any

14   prescribed medications as directed by a medical provider.

15             If not employed at a regular lawful occupation as

16   deemed appropriate by the probation officer, the defendant

17   may be required to perform up to 20 hours of community

18   service per week until employed.  The defendant may also

19   participate in training, counseling, daily job search, or

20   other employment related activities as directed by the

21   probation officer.

22             Next, the defendant shall submit his person,

23   residence, office, vehicle, or any area under the

24   defendant's control to a search conducted by the United

25   States Probation Office or supervised designee at a

1    reasonable time in a reasonable manner based upon reasonable

2    suspicion of contraband or evidence of a supervision

3    violation.

4            The defendant shall warn any other residents or

5    third parties that the premises or areas under the

6    defendant's control may be subject to searches pursuant to

7    this condition.

8            Finally, there's a $100 special assessment on each

9    count -- and that makes it a total, grand total, of $200

10   special assessment -- payable to the Crime Victims Fund,

11   which is required by statute to be paid immediately.

12           Sir, if you feel the Court has not followed the

13   law in the imposition of your sentence, you have a right to

14   appeal your sentence to the Eighth Circuit Court of Appeals

15   which sits in St. Louis.  You have 14 days from today's date

16   to file your notice of appeal to the Eighth Circuit Court of

17   Appeals.

18           Mr. Olson will be your attorney on that appeal.

19   If you do not wish to have Mr. Olson, you can represent

20   yourself or you can hire your own attorney.  In any event,

21   you have 14 days from today's date to submit your notice of

22   appeal to the Eighth Circuit Court of Appeals.

23           The Court has reviewed everything in this file.

24   The guidelines sentence calls for life imprisonment.

25   However, the Court feels that the punishment that will be

1    just in this matter is a 40-year term in prison.

2           The statement, sir, of you wishing that your

3    daughter was here so you can apologize is one of -- it rings

4    so hollow that really the Court should not respond to it.

5    You abused your daughter in the most despicable way possible

6    for a lengthy period of time, isolated her.  She

7    unfortunately is destroyed for the rest of her life.  And

8    the just punishment in this matter is for you to spend

9    practically the rest of your life in prison.

10           Anything further for the Government?

11           MS. SVENDSEN:  No, Your Honor.

12           THE COURT:  Anything further for the Defense?

13           MR. OLSON:  Just briefly, Your Honor.  The Eighth

14    Circuit suggests the following:  I object to the sentence

15    imposed as unreasonable on substantive grounds and I object

16    to the sentence on procedural grounds as inadequate

17    application of the 3553(a) sentencing factors, including the

18    individual characteristics of the defendant.  And I object

19    that the Court relied upon objected-to portions of the PSR

20    in its sentencing.

21           THE COURT:  Anything else that you need to put on

22    the record to cover your appeal?

23           MR. OLSON:  And the objected-to portions of the

24    PSR were specifically objected to and the Government offered

25    no proof on those, and that goes to part of the procedural

1     objection and the sentence.

2            THE COURT:  The Court states all the defense

3     objections are timely.  This is a lengthy sentence the Court

4     has given and certainly the Court of Appeals has a right --

5     I feel the Court of Appeals has a right to specifically look

6     at each and everything the Court has done in this matter

7     because essentially I've given this man a life imprisonment

8     sentence.

9            THE DEFENDANT:  [Inaudible.]

10           THE COURT:  Anything further for the Government?

11           MS. SVENDSEN:  Your Honor, my understanding was

12    that the facts specifically that defendant was objecting to

13    in the PSR were that there were allegations regarding

14    another minor, C.L.H., and that any pictures taken of that

15    minor were at the direction of the defendant.

16           Based on the Court's remarks today, it does not

17    seem that the Court relied on those particular factors in

18    arriving at this sentence.  Just for purposes of clarifying

19    the record, could the Court explain whether it relied upon

20    those factors?

21           THE COURT:  It did not.

22           MS. SVENDSEN:  Thank you, Your Honor.

23           THE COURT:  Anything further?

24           MR. OLSON:  No, Your Honor.

25           (Court adjourned at 2:45 p.m.)

1

2

3

4          I, Lori A. Simpson, certify that the foregoing is a

5     correct transcript from the record of proceedings in the

6     above-entitled matter.

7

8                    Certified by:   *s/ Lori A. Simpson*

9                                    Lori A. Simpson, RMR-CRR

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25