UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 10-173 (MJD/JJG)

| | |
|---|---|
| UNITED STATES OF AMERICA,⠀⠀⠀⠀) | |
| ⠀⠀⠀⠀⠀⠀) | |
| ⠀⠀⠀⠀Plaintiff,⠀⠀⠀⠀) | **GOVERNMENT'S RESPONSE IN** |
| ⠀⠀⠀⠀⠀⠀) | **OPPOSITION TO DEFENDANT'S** |
| ⠀⠀v.⠀⠀⠀⠀) | **MOTION FOR REDUCTION OF** |
| ⠀⠀⠀⠀⠀⠀) | **TERM OF IMPRISONMENT** |
| KENNETH LEON WILCOX,⠀⠀⠀⠀) | **PURSUANT TO 18 U.S.C.** |
| ⠀⠀⠀⠀⠀⠀) | **§ 3582(c)(1)(A)(i)** |
| ⠀⠀⠀⠀Defendant.⠀⠀⠀⠀) | |
| ⠀⠀⠀⠀⠀⠀) | |

Kenneth Wilcox has filed a motion asking this Court to reduce his sentence of imprisonment under 18 U.S.C. § 3582(c)(1)(A)(i) and order his immediate release, relying primarily on the threat posed by the COVID-19 pandemic. The United States respectfully opposes the motion. Wilcox has received his first dose of the Pfizer vaccine, and he will likely soon be fully vaccinated. At that time, Wilcox will present no "extraordinary and compelling reasons" for early release from prison. Moreover, the Court should deny Wilcox's request to be released 23 years early—a 2/3 reduction in his sentence—following his conviction for sexually abusing his daughter for four years, starting when she was twelve years old, by raping her hundreds of times. Releasing Wilcox now would endanger the community, would result in a manifest injustice given the seriousness of his offenses, and would be inconsistent with this Court's findings at the sentencing hearing and with an analysis of the § 3553(a) factors.

## BACKGROUND

Kenneth Wilcox began raping his daughter, B.C., on a weekly basis when she was about 12 years old. (PSR ¶ 6.) Wilcox videotaped five of the rapes, and he later masturbated while watching the recordings. (Plea Agreement and Sentencing Stipulations, hereinafter "Pl. Agr." ¶ 2.) These weekly rapes continued for approximately four years, until B.C. was sixteen years old, and ended only when B.C. brought a videotape depicting her sexual abuse to a friend's mother, who provided the tape to law enforcement. (PSR ¶¶ 5-6.)

The five videos of Wilcox sexually abusing B.C. were shot between the time that B.C. was 14 and 15 years old. (*Id.* ¶¶ 10-15.) The Court viewed the videos in advance of Wilcox's sentencing hearing. The videos were shot in the cab of Wilcox's semi-truck and in hotel rooms while B.C. was traveling with Wilcox on his trucking runs. (*Id.*)

In addition to videotaping his sexual abuse of B.C., Wilcox made her sign contracts detailing the sex acts she would be required to perform. (*Id.* ¶¶ 8-9.) The contracts were lengthy and discussed such topics as "master and slave roles," "punishments for noncompliance," and "payment for nude pictures of [B.C.'s] friends." (*Id.* ¶ 9.) The contracts also "talk of starting a 'sex house with [B.C.] and allowing the defendant to teach [B.C.'s] daughters about sex (provided that she had daughters in the future)." (*Id.* ¶¶ 8-9.)

During the execution of search warrants at Wilcox's residence and in a semi-trailer Wilcox used for storage, law enforcement recovered a large amount of pornography, including images of child pornography. (*Id.* ¶¶ 7-9.) These images included 20 series of

child pornography with identified victims and many topless images of B.C.  (*Id.* ¶ 90.)   In her victim impact statement, B.C. reported that she "suffers from flashbacks, nightmares, and suicidal thoughts as a result of her sexual victimization."  (*Id.* ¶ 17.)

On October 14, 2010, Wilcox pled guilty to one count of transportation of a minor with intent to engage in criminal sexual activity, in violation of 18 U.S.C. § 2423(a), and one count of production of child pornography, in violation of 18 U.S.C. §§ 2251(a) & (e) . (Doc. No. 46.)  These offenses carried a ten-year mandatory minimum and a fifteen-year mandatory minimum term of imprisonment, respectively.  On April 5, 2011, the Court held a sentencing hearing.  After hearing from both parties, the Court sentenced Wilcox to 480 months' imprisonment.  (Doc. No. 69, Sent. Tr. at 15.)  In doing so, the Court stated that after reviewing everything in the file, "the Court feels that the punishment that will be just in this matter is a 40-year term in prison."  (*Id.* at 21-22.)  The Court addressed Wilcox's claimed remorse for his crimes as follows:

> The statement, sir, of you wishing that your daughter was here so you can apologize is one of—it rings so hollow that really the Court should not respond to it.  You abused your daughter in the most despicable way possible for a lengthy period of time, isolated her.  She unfortunately is destroyed for the rest of her life.  And the just punishment in this matter is for you to spend practically the rest of your life in prison.

(*Id.* at 22.)   The Court further stated that "essentially I've given this man a life imprisonment sentence."  (*Id.* at 23.)

Wilcox's term of imprisonment began when he was arrested on December 14, 2009, and he has served just over 11 years of his 40-year sentence.  (*See* Gov't Ex. 1, Sentence Monitoring Computation Data at 2.)   Wilcox's BOP medical records reflect current

diagnoses of COPD, esophageal reflux, hyperlipidemia, allergic rhinitis, vitamin D deficiency, anxiety disorder, and a BMI of 32. (*See* Gov't Ex. 2, BOP Medical Records at 3.) Wilcox's medical records further reflect that these conditions appear to be well controlled in the BOP through medication and medical appointments.

Wilcox's disciplinary record while in BOP custody reflects three disciplinary violations. Most recently, on October 22, 2020, Wilcox was sanctioned for possessing an unauthorized item with a loss of quarters for one year. (Gov't Ex. 3.) In June 2018, Wilcox was sanctioned for refusing work with a loss of his job in food service for a minimum of 180 days. (*Id.*) In July 2013, Wilcox was sanctioned for possessing an unauthorized item with 15 days' loss of visiting. (*Id.*)

Following his conviction in this case, Wilcox appealed his sentence to the Eighth Circuit Court of Appeals, claiming that his 480-month sentence was unreasonable. After detailing the facts of the case, the Court of Appeals held that this Court properly concluded that "the nature and circumstances of Wilcox's offense deserved greater consideration under section 3553(a) than any of the mitigating factors presented by Wilcox" and affirmed the Court's sentence. *United States v. Wilcox*, 666 F.3d 1154, 1157-58 (8th Cir. 2012).

On May 6, 2013, Wilcox filed a motion under § 2255 to vacate, set aside, or correct his sentence. (Doc. No. 81.) In his motion, Wilcox claimed (1) that his attorney was ineffective for failing to argue that the evidence against him had been tampered with; (2) that his attorney was ineffective in failing to argue that the search of his trailer was illegal; and (3) that the Court was racist and prejudiced against sex offenders. On December 19, 2013, the Court denied Wilcox's § 2255 motion. (Doc. No. 92.)

4

On August 6, 2020, Wilcox submitted a request to the Warden at USP Marion for compassionate release.  (Doc. No. 109, Def. Sealed Addendum at 3.)  The Warden denied Wilcox's request on January 12, 2021.  (*Id.* at 4.)  On December 28, 2020, Wilcox filed a *pro se* motion for compassionate release.  (Doc. No. 101.)  Wilcox's appointed counsel filed a supplemental memorandum on March 10, 2021.  (Doc. No. 108.)

Wilcox is currently serving his sentence at USP Marion, located in Marion, Illinois. As of this filing, USP Marion has 4 inmates and 6 staff members currently infected with COVID 19.   BOP, *COVID-19: Coronavirus*, https://www.bop.gov/coronavirus/ (last accessed March 15, 2021).  Wilcox's BOP medical records reflect that throughout the pandemic, he has been tested regularly—on at least twelve occasions—for COVID-19, with each test coming back negative.  (Gov't Ex. 2 at 14-15.)

On March 4, 2021, Wilcox received his first dose of the Pfizer COVID-19 vaccine. (*Id.* at 20.)

## **ARGUMENT**

Wilcox's motion for compassionate release is based on his argument that his medical conditions, including chronic obstructive pulmonary disorder (COPD), asthma, and obesity, with a BMI of 32, make him particularly vulnerable to COVID-19.  Absent the risk of COVID-19, Wilcox would not qualify for compassionate release based on his medical conditions, and his recent vaccination against COVID-19 undermines his argument that his is particularly vulnerable to the virus.  Moreover, Wilcox poses a significant danger to the public, and the statutory sentencing factors do not weigh in favor of his release.  Wilcox's motion should be denied.

1.     **Wilcox has received the COVID-19 vaccine and therefore no longer presents extraordinary and compelling reasons for early release from prison.**

Where, as here, the exhaustion requirement is met, a court may reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i).[1] As the movant, Wilcox bears the burden to establish that he is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

The relevant policy statement includes an application note that specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." First, the standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). As Wilcox is not suffering from a terminal illness, this qualifier does not apply.

---

[1] The policy statement refers only to motions filed by the BOP Director. That is because the policy statement was last amended on November 1, 2018, and until the enactment of the First Step Act on December 21, 2018, defendants were not entitled to file motions under § 3582(c). *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239; *cf.* 18 U.S.C. § 3582(c) (2012). In light of the statutory command that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission," § 3582(c)(1)(A)(ii), and the lack of any plausible reason to treat motions filed by defendants differently from motions filed by BOP, the policy statement applies to motions filed by defendants as well.

Second, the standard is met if the defendant is:

> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, cmt. n.1(A)(ii).

But for the COVID-19 pandemic, Wilcox would present no basis for compassionate release because his medical conditions—COPD, asthma, and a BMI of 32—are well-controlled and do not present any impediment to his ability to provide self-care in the institution during non-pandemic times. *See United States v. Ayon-Nunez*, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020) (concluding that the evidence does not "support . . . any suggestion that defendant's ability 'to provide self-care within the environment of a correctional facility' has been substantially diminished"); *United States v. Rivernider*, 2019 WL 3816671, at *3 (D. Conn. Aug. 14, 2019) (compassionate release denied because, although defendant previously suffered heart attack, defendant's condition is stable); *United States v. Lynn*, 2019 WL 3082202 (S.D. Ala. July 15, 2019) (denying compassionate release because the inmate's health ailments do not affect his ability to function in a correctional environment). Wilcox's recent medical records show that his medical needs are well-addressed at USP Marion.

The only question, then, is whether the risk of COVID-19 changes that assessment. The answer in this case is no. The government acknowledges that Wilcox presents two risk factors identified by the CDC as heightening the risk of severe injury or death if Wilcox were to contract COVID-19—COPD and obesity, with a BMI of 32. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed March 13, 2021). The government agrees that these conditions present "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility," as stated in § 1B1.13, cmt. n. 1(A)(ii).[2]

However, Wilcox has now received his first dose of the Pfizer COVID-19 vaccine. By the time the Court rules on his motion, Wilcox is likely to be fully vaccinated. Scientific consensus is that the vaccine is extraordinarily effective in combating COVID-19. The CDC states that all COVID-19 vaccines currently in use are classified as "highly effective at preventing COVID-19." CDC, *Benefits of Getting a COVID-19 Vaccine*, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html (last accessed March 15, 2021). Wilcox is more protected from COVID-19 than most other people by virtue of his access to the vaccine. Accordingly, he can no longer claim to have "extraordinary and compelling reasons" for early release from prison, even taking into

---

[2] Wilcox also claims to suffer from moderate to severe asthma, which the CDC lists as a condition that "might" cause an increased risk for serious illness from COVID-19. Although Wilcox's BOP medical records indicate a current diagnosis of asthma (*see* Gov't Ex. 2 at 14), nothing in the records indicates that Wilcox's asthma is moderate to severe, and Wilcox has provided no additional records in support of this claim.

account his medical conditions.  *See United States v. Beltran*, 2021 WL 398491, at *3 (S.D. Tex. Feb. 1, 2021) (relief denied in light of administration of first dose of the Pfizer vaccine); *United States v. Smith*, 2021 WL 364636, at *2 (E.D. Mich. Feb. 3, 2021) ("According to the CDC, the Moderna vaccine is exceptionally safe and effective, preventing 94.1% of infections in clinical trials. . . .  Accordingly, absent some shift in the scientific consensus, Defendant's vaccination against COVID-19 precludes the argument that his susceptibility to the disease is 'extraordinary and compelling' for purposes of § 3582(c)(1)(A)."). The Court should deny Wilcox's motion.

### 2.   Releasing Wilcox more than 20 years early would be contrary to the § 3553(a) factors.

Even if there were extraordinary and compelling reasons that would warrant a reduction in Wilcox's sentence, the Court must assess whether he has met his burden to show that a reduction is warranted in light of the danger he would pose to the community and must consider the statutory sentencing factors set forth in § 3553(a).  See 18 U.S.C. § 3582(c).  In this case, both considerations weigh against Wilcox's early release.

#### a.   Wilcox still poses a danger to public safety.

First, Wilcox's early release would pose a danger to the community.  As the Court knows, in the sex contracts that he made his daughter sign, Wilcox indicated a desire to obtain naked pictures of other children and to "teach [his victim's] daughters about sex." (PSR ¶¶ 8-9.)  In addition, Wilcox's BOP medical records indicate a current diagnosis of pedophilic disorder.  (Gov't Ex. 2 at 14.)  Wilcox's conduct in this case shows that he has a sexual interest in children, he committed hands-on offenses against a child week after

week for four years, he stopped doing so only because he was caught, and he sought out opportunities to offend against other children.   In addition, the Probation Office's investigation indicates that Wilcox does not have an acceptable release plan.   Wilcox has not met his burden to establish that his early release would not pose a danger to the community, and his motion should be denied.

      **b.**      **The § 3553(a) factors counsel strongly against Wilcox's motion.**

The power to reduce a defendant's term of imprisonment under § 3582(c)(1)(A) is discretionary—§ 3582(c)(1)(A) provides that a court "may" reduce the term of imprisonment for extraordinary and compelling reasons.   The Eighth Circuit recently affirmed that even if a defendant is eligible for compassionate release due to extraordinary and compelling reasons under § 3582, the district court still has discretion to deny the defendant's motion for compassionate release based on an analysis of the § 3553(a) factors. *United States v. Rodd*, 966 F.3d 740, 747-48 (8th Cir. 2020).

In *Rodd*, the defendant was serving an 87-month sentence for wire fraud after swindling 23 investors out of $1.8 million and was scheduled for release in November 2020. *Id.* at 741-42.   The defendant moved for compassionate release based on a host of medical problems, including atrial fibrillation, congestive heart failure, high blood pressure, and blindness. *Id.* at 744.   In denying the defendant's motion for compassionate release, Judge Montgomery assumed that the defendant met the definition of "extraordinary and compelling circumstances" and qualified for compassionate release. *Id.* at 745.   However, the district court analyzed the § 3553(a) factors and concluded that "even assuming a more expansive definition of 'extraordinary and compelling reasons' under the

10

First Step Act," the defendant did not qualify for compassionate release under the § 3553(a) factors. *Id.* at 745-46.  The Eighth Circuit affirmed, stating that "we are confident the district court appropriately reviewed the record evidence and found Rodd's case not sufficiently persuasive to warrant relief." *Id.* at 748.

Courts around the country, including this Court, have denied motions for compassionate release from defendants who have committed similar crimes to Wilcox—even those with serious health conditions—based on an analysis of the § 3553(a) factors and the danger to the community.  For example, in *United States v. Hahn*, the defendant had been convicted of raping a 12-year-old girl and producing child pornography.  2020 WL 980185, at *3 (D. Minn. Feb. 28, 2020).  The defendant's scheduled release date was in July 2023, and he claimed to suffer from cancer of the larynx and congenital heart failure. *Id.* at *1.  This Court denied the defendant's motion for compassionate release on the grounds that (1) "[t]he victim and her family were devastated by Defendant's abuse," so the seriousness of the offense did not support the defendant's motion; (2) "the statute of conviction carries a fifteen-year mandatory minimum, and Defendant's early release would subvert congressional intent with regard to this type of offense;" and (3) early release would not protect the public, in part because "the risk of recidivism is high among sex offenders, and in particular pedophiles." *Id.* at *3 (citing *Smith v. Doe*, 538 U.S. 84, 103 (2003) ("The risk of recidivism is 'frightening and high.'"); *United States v. Garthus*, 652 F.3d 715, 720 (7th Cir. 2011) ("A pedophilic sex offender who has committed both a child pornography offense and a hands-on sex crime is more likely to commit a future crime,

including another hands-on offense, than a defendant who has committed only a child-pornography offense.")).

Other courts around the country to consider the issue in similar cases have similarly denied compassionate release.  *See*, *e.g.*, *United States v. Clews*, 2020 WL 3529780, at *5 (S.D. Cal. June 30, 2020) (assuming child pornography defendant with COPD could demonstrate extraordinary and compelling reasons but denying motion for compassionate release based on danger to the community and § 3553(a) factors); *United States v. Wooley*, 2020 WL 2490093, at *2-3 (D. Or. May 14, 2020) (denying compassionate release to child pornography possession defendant with COPD and asthma because defendant failed to meet his burden to establish lack of danger to community); *United States v. Donaghy*, 2020 WL 4805353, at *3 (E.D. Penn. Aug. 18, 2020) (denying compassionate release to defendant who "pled guilty of a crime involving an extended period of sexual exploitation of a 13-year-old child" based on seriousness of offense and because defendant had served only one third of his sentence); *United States v. Fischer*, 2020 WL 2769986, at *1-6 (D. Md. May 27, 2020) (assuming defendant who transported 15-year-old girl interstate to engage in illicit sexual conduct could demonstrate extraordinary and compelling reasons due to medical conditions, but denying compassionate release based on danger to the community and gravity of offense).

After Wilcox filed his compassionate release motion, the government received the following statement from Wilcox's victim urging the Court not to grant Wilcox early release.  Her statement speaks to both the nature and circumstances of the offense, which

12

continues to impact Wilcox's victim today, and to the need to protect the community from

Wilcox.  The victim's statement is as follows:

> I personally am the individual that Kenneth Leon Wilcox victimized in multiple ways.  Starting the summer just after I turned 11 yrs old which was 2004 it continued until I was 16 yrs old December 2009.  He started his abuse when he took me in his truck on a trip to California, he abused me in multiple different states.  I tried telling people for years what he was doing to me, I was called a liar, told that I was making it up because I was just mad at him for something.  No one ever believed me, I even told the therapist [name redacted] what my father was doing to me and was called a liar by him.  I was finally believed in 2009 when I told my at the time best friend [name redacted] who then told her mom about it and she got me away from him in 2009.  They tried to place me with my alcoholic aunt and uncle and I said that if that happened I would kill myself.  I spent a week in a behavioral hospital before being placed into my first of 2 foster homes after the abuse came to light.  I then spent from 16yrs old until 21yrs old in the foster system where I aged out of the system, I have struggled since I was 11yrs old to trust anyone, I've seen multiple therapists all to have them leave the office that they worked at or practiced at a few months after I started seeing them.  I am now 28yrs old and I still struggle daily with the things that he did to me, I DO NOT THINK that it is in the public's best interest that he be allowed to walk free where he can victimize another young female.  When he was arrested he was trying to get a new victim who was the same age I was when he began abusing me.  So no I DO NOT THINK that he should be released because he will offend again no matter what he has told people, he was never abused in the ways that he abused me.  He is a liar and will say whatever he thinks will help himself in the long run.  The best place for him is right where he is, locked up and unable to hurt anyone else ever again.  Because he was also threatening me and telling me not to go to the cops about what he was doing to me all those years because he didn't want to go to jail or prison.  But he has not learned anything since he was locked up, he was still trying to beg my mom and others to get me to shut up about what had happened even after the evidence was all turned over to the police and the FBI.  He had even told my mom that it was all a lie and that he didn't do anything even after he was arrested, he actually was arrested jumping route with an oversized load in an attempt to come back and get me to shut me up.  No one is safe if he gets released from prison, because he still blames me for everything when he is the one that did it to me and destroyed my life for his own pleasure.

Like the defendants in *Hahn*, *Clews*, *Wooley*, *Donaghy*, and *Fischer*, a reduction in Wilcox's sentence would not be appropriate in light of the nature and circumstances of his offense.  It would not reflect the seriousness of Wilcox's crimes against his daughter, would not provide just punishment, would not provide adequate deterrence to Wilcox for future criminal conduct, and would not protect the public from the danger posed by the likelihood Wilcox will commit further sex offenses upon his release from prison.  Wilcox committed an extraordinarily serious hands-on sex offense against his daughter, and he did so hundreds of times for at least four years.  Taking into account all of the § 3553(a) factors, this Court concluded that a 480-month sentence was the minimum sentence necessary to comply with the purposes of sentencing.  Releasing Wilcox after serving only 11 years would subvert Congress' intent in enacting a 15-year mandatory minimum for Wilcox's crime and would be contrary to the § 3553(a) factors.

## **CONCLUSION**

For these reasons, the government respectfully requests that Wilcox's motion for compassionate release be denied.

Dated:  March 15, 2021                          Respectfully Submitted,

                                                W. ANDERS FOLK
                                                Acting United States Attorney


                                                BY:  KIMBERLY A. SVENDSEN
                                                Assistant United States Attorney